# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3786 | DATE | 12/22/2004 |
| CASE TITLE | Raymond Russell vs. Sheahan et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss (22-1) is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 27 2004 | |
| ✓ | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | 34 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| GL | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RAYMOND RUSSELL | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 03 C 3786 |
| | ) | |
| UNKNOWN COOK COUNTY, SHERIFF'S OFFICERS, MICHAEL SHEAHAN, Cook County Sheriff, and COOK COUNTY | ) | |
| Defendants. | ) | |

DOCKETED
DEC 27 2004

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Raymond Russell filed this action against Cook County Sheriff Michael Sheahan, Cook County, and Unknown Cook County Sheriff's Officers, complaining that he was subject to excessive force and inhumane conditions of confinement while detained at the Cook County Jail in violation of 18 U.S.C. § 1983. Plaintiff seeks indemnification from Cook County for any judgment entered against the individual defendants. Sheahan and Cook County have moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6), claiming that (1) Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, (2) the alleged violations do not rise to the level of a constitutional magnitude, and (3) Plaintiff has not stated a valid claim against Sheahan in his individual capacity. For the reasons set forth below, we grant Defendants' motion with respect to the excessive force claim against Sheahan in his individual capacity, but deny Defendants' motion as to all other claims.

34

## BACKGROUND

For the purpose of this motion, we recite the facts as set forth in the complaint. *LeBlang Motors, Inc. v. Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998). In February of 2000, Plaintiff was incarcerated at Cook County Jail pursuant to a bail bond related to a child support matter. (Am. Compl. ¶ 6.) While detained, Plaintiff was subject to various civil rights violations.

First, Plaintiff alleges excessive force by jail officers. Officers repeatedly struck Plaintiff on the head and used violent dogs to assault him. (Am. Compl. ¶¶ 10, 13.) While Plaintiff does not know these officers' names, he believes them to be members of the Cook County Sheriff's Special Response Team, operating "under the direction of [Defendant Sheriff] Michael F. Sheahan." *Id.* ¶ 10. Plaintiff claims that this "physical violence . . . was unnecessary, unreasonable, and excessive, and was therefore in violation of [his] Fourth and/or Fourteenth Amendment Rights." *Id.* ¶ 23.

Second, Plaintiff asserts that he was subject to inadequate conditions of confinement. He was placed in a cell of Division Five, which was overcrowded and populated by "known and dangerous convicted felons." This situation led to frequent fights amongst prisoners, resulting in injuries to the Plaintiff. *Id.* ¶ 15. Plaintiff attributes this violent climate to "the custom, policy and practice of overcrowding cells, housing pretrial detainees with convicted felons, keeping prisoners confined in their cells and failing to provide them with an adequate diet, failing to provide dining and recreational facilities." *Id.* He contends that "Defendants were aware of the occurrence of such incidents and took no adequate steps to alleviate the conditions which caused them." *Id.* ¶ 16. Moreover, he alleges that he was provided with infested food and was forced to sleep for "sixty-five days on a cold jail floor covered with was covered with rodent feces, blood, and human vomit." *Id.* ¶¶ 17-18. Plaintiff claims that the Defendants' conduct in this regard violated "deprived [him] of rights, privileges and immunities

secured to him by the Four [sic] and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder." *Id.* ¶ 22.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may only challenge the adequacy of a complaint, not the merits of a case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When deciding a motion to dismiss, we "accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *LeBlang Motors, Inc.*, 148 F.3d at 690. Accordingly, we may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**ANALYSIS**

Defendants move to dismiss Plaintiff's complaint on three grounds: 1) Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act; 2) Plaintiff's allegations do not rise to a constitutional magnitude; and 3) Plaintiff failed to state a claim against Defendant Sheahan in his individual capacity. We address each of these grounds below.

**A.      Failure to Exhaust Administrative Remedies**

Defendants contend that Plaintiff's complaint should be dismissed because he failed to comply with the exhaustion requirement of the Prison Litigation Reform Act (PLRA). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The Supreme Court has instructed that inmates must comply with the

3

PLRA's requirements prior to filing suit. *See, e.g., Booth v. Churner*, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). Defendants claim that, because Plaintiff has neither claimed nor demonstrated exhaustion of administrative remedies as required by the PLRA, we should dismiss his complaint as a matter of law.

Plaintiff responds with a hodgepodge of convoluted arguments, generally devoid of legal support, three of which are discernable: 1) the grievance procedure is a futile endeavor that no "reasonable person" would have completed; 2) excessive force claims should be exempted from the PLRA's requirements; and 3) he lacked notice about the grievance procedure's existence. We address each in turn.

### 1.     Futility

Plaintiff posits that filing a grievance was a futile endeavor because Defendants "did not allow grievances to move forward." (Pl.'s Resp. at 4.) We reject this argument because Plaintiff lacks standing to raise it.

A plaintiff lacks standing under Article III of the Constitution when he does not demonstrate "injury in fact" but merely makes a "hypothetical" argument. *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Plaintiff states that he was unaware of the procedure's existence and that accordingly he never filed a grievance. He subsequently argues that, even if he had been aware of the grievance procedure's existence, he should be excused from completing it because it was a futile requirement. However, this argument is premised on a hypothetical event. Because Plaintiff never granted Defendants the opportunity to act on a filed grievance, he has no standing to claim that this procedure is a futile and wasteful requirement. Indeed, Plaintiff has not suffered a "distinct and palpable injury" that is "fairly

traceable" to the allegedly dysfunctional grievance procedure. *See Larson v. Valente*, 456 U.S. 228, 239 (1982). For the sake of argument, however, we note that Plaintiff's futility argument would fail even if he had standing to raise it. We agree with Defendants that "[t]here is no futility exception" to the PLRA's requirement that administrative remedies be exhausted before litigation is instigated against a correctional institution. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999).

### 2. <u>Excessive Force</u>

Plaintiff argues that we "should hold that the PLRA should be narrowly interpreted to exempt prisoner claims of excessive force from the statute's requirements." (Pl.'s Resp. at 5.) However, Plaintiff offers no support for this proposition besides a law review article. In fact, as correctly stated by Defendants, Plaintiff is requesting that this Court take a position directly contradicted by recent Supreme Court authority. In *Porter v. Nussle*, 534 U.S. 516 (2002), the Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege *excessive force* or some other wrong." *Id.* at 532 (emphasis added). Accordingly, we reject Plaintiff's argument.

### 3. <u>Notice</u>

Plaintiff alleges that he was never placed on notice that he needed to file a grievance if he had a complaint. He states that, instead of writing grievances, he made several–apparently verbal–complaints about his conditions of incarceration. However, Plaintiff's allegations are remarkably vague. He simply offers that "[o]n several occasions while incarcerated, [he] requested that *certain conditions* be addressed." (Pl.'s Resp. at 4.) (emphasis added). But Plaintiff neither explains the nature of these conditions, nor the specific steps he took to have them addressed. Plaintiff merely adds that he "also made a request demanding that eyeglasses be provided." *Id.* He subsequently states that Defendants failed to act on any of his complaints. Moreover, Plaintiff states that jail personnel "never

advised [him] that there was an administrative procedure whereby he could file a formal grievance."[1] *Id.* Accordingly, Plaintiff argues that Defendants are not entitled to dismissal as a matter of law for his failure to exhaust administrative remedies under the PLRA, as he was never placed on notice about the grievance procedure's existence. *Id.*

We first consider whether Plaintiff's notice argument is supported by precedent. Although the Seventh Circuit has not yet considered this issue, several District Courts in our jurisdiction have. In *Hall v. Sheahan*, the court held that lack of awareness about a grievance procedure's existence could account for an inmate's inability to exhaust administrative remedies: "An institution cannot keep inmates in ignorance of [its] grievance procedure and then fault them for not using it. A grievance procedure that is not made known to inmates is not an 'available' administrative remedy." No. 00 C 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) (internal citation omitted). Further, *Hall* determined that "[t]o be entitled to judgment on grounds of non-exhaustion, [the] defendants would need to establish that the grievance procedure was posted in such a manner that [the plaintiff] could reasonably be expected to see it, or that Jail employees explained the procedure to him." *Id.* Because these were unresolved questions of fact, the court denied the defendants' motion to dismiss for failure to exhaust administrative proceedings. *Id.*

This decision was followed by *Arreola v. Choudry*, which emphasized that "the court in *Hall* aptly explained [that] 'an institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it.'" No. 03 C 02854, 2004 WL 868374, at *8 (N.D. Ill Apr. 22,. 2004) (citing *Hall*, 2001 WL 111019, at *2 ). *Arreola* denied the defendants' motion to dismiss, and held that

---

[1] Plaintiff does not make this claim in his complaint, but rather in his response to Defendants' present motion to dismiss. We note, however, that a plaintiff may supplement his complaint with a responsive brief to defeat a motion to dismiss so long as the supplemental facts are consistent with the allegations of the complaint. *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001). Therefore, we consider this allegation in deciding the present motion.

"when administrative remedies are effectively made unavailable *by the actions of prison officials*, the prisoner may file suit without pursuing those unavailable remedies to conclusion." *Id.* at *2-3 (emphasis added). Similarly, in *Davis v. Milwaukee County*, the court followed *Hall* and held that jail officials had interfered with the plaintiff's ability to exhaust administrative remedies by not notifying him at all about the grievance procedure's existence.[2] 225 F. Supp. 2d 967, 976 (E.D. Wis. 2002) (citing *Hall*, 2004 WL 868374, at *2).

*Hall*'s approach is fully consonant with the goals of the PLRA, which aims to foster internal administrative resolutions to inmates' complaints in lieu of litigation in the courts. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Providing reasonable notice comports with that objective by directing inmates to follow mandatory grievance procedures, instead of letting them file lawsuits that will be dismissed for failure to exhaust administrative remedies.

We therefore find that *Hall*'s rationale suitably addresses lack of notice issues such as those presented in the instant case.[3] Whether Plaintiff was aware or should have been aware of the grievance procedure's existence are "questions of fact [that] are not normally resolved by a motion to dismiss." *Hall*, 2001 WL 111019, at *2. Nevertheless, Plaintiff's lack of notice claim is not dispositive *per se*. Indeed, "correctional officials are entitled to the benefit of § 1997e(a) as long as the institution has made

---

[2] Courts in other jurisdictions have reached similar conclusions by following *Hall*. *See, e.g., Arnold v. Goetz*, 245 F. Supp. 2d 527, 538 (S.D.N.Y. 2003) ("[T]he principles articulated in *Hall* apply with full force" when jail officials "failed to provide [the plaintiff] with access to materials which might . . . have informed him about how he could avail himself of [the grievance procedure]."); *see also Burgess v. Garvin*, No. 01 C 10994, 2004 WL 527053, at * 3-4 (S.D.N.Y. 2004).

[3] Although the Seventh Circuit has not examined this notice issue, two other circuit courts have. *See Brock v. Kenton County*, 93 Fed. Appx. 793 (6th Cir. 2004); *Gonzales-Liranza v. Naranjo*, 76 Fed. Appx. 270 (10th Cir. 2003). These courts concluded that lack of notice could not, under any circumstances, account for an inmate's failure to exhaust administrative remedies. We find these decisions unpersuasive. For the foregoing reasons, we believe that the court's approach in *Hall* constitutes the better approach for deciding whether a lack of notice claim is sustainable.

7

a reasonable, good-faith effort to make a grievance procedure available to inmates." *Id.* An inmate cannot avoid a motion to dismiss if conclusive evidence indicates that his alleged ignorance of the grievance procedure was due to his own willful blindness. If an inmate was provided with unambiguous information about the procedure, he cannot "close his eyes to what he reasonably should have known" and claim that he lacked notice. *Id.*

Courts have held that correctional officials may offer reasonable notice by simply providing inmates with an informational handbook outlining the grievance procedure. *See, e.g., Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 999 (6th Cir. 2004) (rejecting inmate's lack of notice claim where grievance policy was set forth in handbook provided to inmates at intake; and where inmate did not allege that he never received handbook or that prison officials denied him access to it.) In the instant case, however, there is no indication of whether Defendants provided Plaintiff with such an informational handbook.[4] Nor is it clear whether Defendants otherwise provided actual notice to Plaintiff, such as by verbally informing him or having him sign a form acknowledging the existence of the grievance procedure upon intake. Instead, Defendants state that "Plaintiff does not allege that he was ever denied a request for a grievance form or told that grievance forms were *unavailable* to him." (Def.'s Reply at 3) (emphasis added). Yet, this argument fails to meet the substance of Plaintiff's claim, as he alleges that he was never told that grievance forms were *available* to him, and was, therefore, unaware of their existence.

Defendants also contend that Plaintiff was under notice of his need to file a grievance, as the County Jail has a "grievance procedure [that] is well-established and adheres to the requirements of the PLRA." (Def.'s Reply at 2.) More specifically, Defendants refer to General Order 14.5, which outlines

---

[4]Even if Defendants were alleging that such a handbook existed, this assertion would need corroboration. *Arnold*, 245 F. Supp. 2d at 539 (where inmate claimed lack of notice about grievance procedures, court rejected defendants' claim that notice had been effected by an informational handbook, as this "information [was] not corroborated by any accompanying affidavits.").

the grievance procedure. *Id.* However, Defendants' argument again fails to counter Plaintiff's deficient notice claim, as Plaintiff contends that he was not aware of the grievance procedure's *existence*.[5] Simply put, the issue is whether "the grievance procedure was posted in such a manner that [Plaintiff] could reasonably be expected to see it, or that Jail employees explained the procedure to him." *Hall,* 2001 WL 111019, at *2. These issues present questions of fact that cannot be resolved on a motion to dismiss. *Id.* Accordingly, we deny Defendants' motion to dismiss for failure to exhaust administrative remedies because questions of fact remain as to whether Plaintiff was aware or should have been aware of the grievance procedure's existence.

## B.  Constitutional Magnitude

Defendants contend that Plaintiff's claims regarding his conditions of confinement do not rise to a constitutional magnitude. The Supreme Court has articulated a two-prong standard for determining whether conditions of confinement are unconstitutional.[6] *Wilson v. Seiter,* 501 U.S. 294 (1991). Under the first prong, we must conduct an objective inquiry into whether Plaintiff's alleged deprivations are "sufficiently serious" to violate the Constitution. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citing

---

[5]Further, Defendant's reliance on this General Order is misplaced. They request that we "take judicial notice that the CCDOC has a well established and well published grievance procedure, including a procedure for appeal, which is documented in the John Howard Association's May 12, 2000 Status Report in the *Duran v. Sheahan,* et al., 74 C 2949 litigation." (Def.'s Reply at 2-3.) Nevertheless, in *Hall,* Defendants were notified that this *same* report is a "sort of offhand reference [that] is unacceptable [because] taking judicial notice of public records is not the same thing as taking judicial notice of the truth of what is stated in them." *Hall,* 2001 WL 111019, at *2.

[6]Plaintiff's claims are based on events that occurred while he was a pre-trial detainee. Accordingly, his claims are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits any form of punishment as to pre-trial detainees. *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996). The standard that we apply to Plaintiff's claims, however, is derived from *Wilson,* an Eighth Amendment case. 501 U.S. 294 (1991). We apply this framework here because the "standards for assessing claims of unconstitutional conditions of confinement under the Eighth and Fourteenth Amendments are actually quite similar." *Hines v. Sheahan,* 845 F. Supp. 1265, 1267 (N.D. Ill. 1994).

*Wilson*, 501 U.S. at 298). Assuming that the severity prong is satisfied, the second prong requires us to conduct a subjective inquiry to assess whether Defendants had a "sufficiently culpable state of mind." *Id.* at 834 (citing *Wilson*, 501 U.S. at 297). Under this second prong, Plaintiff must adequately allege that the Defendants acted with "'deliberate indifference' to inmate health or safety." *Id.* (citing *Wilson*, 501 U.S. at 302-03).

### 1. "Sufficiently Serious" Deprivations

Plaintiff claims that because of the "custom, policy, and practice of overcrowding cells," and his actual confinement in such a cell, he was subjected to an environment where inmate fights frequently occurred, resulting in injuries to him. (Am. Compl. ¶ 15.) As the Defendants point out, overcrowding a cell is not unconstitutional *per se*. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Nevertheless, if overcrowding leads to dangerous conditions with increased inmate violence it may violate the Constitution. *See id.* (noting that, in that case, overcrowding did not lead to an increase in violence among inmates). Judged merely on the allegations in his complaint, therefore, Plaintiff has sufficiently claimed that the overcrowding is "sufficiently serious" to violate the Constitution. *Farmer*, 511 U.S. at 834 (citations omitted). Moreover, Plaintiff alleges that he "was made to sleep for sixty-five (65) days on a cold jail floor which was covered with rodent feces, blood, and human vomit." (Am. Compl. ¶ 18.) Defendants are correct that they may not have violated Plaintiff's rights by making him sleep on the floor so long as they duly provided him with a mattress or bedding. However, they would have nonetheless violated Plaintiff's rights by subjecting him, for sixty-five days, to grossly unsanitary living and sleeping conditions, as Plaintiff has alleged. *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) ("Conditions such as a filthy cell may be tolerable for a few days but are intolerably cruel for weeks or months."). Accordingly, we find that Plaintiff's allegation passes the first prong for unconstitutional conditions of confinement.

10

## 2. Deliberate Indifference

Plaintiff must also allege that the Defendants acted with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. Defendants contend that Sheriff Sheahan was unaware that inmates were "subjected to an overcrowded cell." (Def.'s Mot. at 7.) When ruling on a motion to dismiss, however, we merely consider the sufficiency of a plaintiff's allegations. Here, Plaintiff satisfactorily alleges that the "Defendants were aware" that the overcrowding of cells led to violence among inmates, which left Plaintiff and other inmates injured, and "took no adequate steps to alleviate . . . [these conditions]." (Am. Compl. ¶¶ 15-16.) Under the liberal notice pleading regime of the Federal Rules, this is sufficient to state a claim.

Defendants subsequently argue that "even if Sheriff Sheahan can be held to a general knowledge of the overcrowded conditions, it cannot be said that he approved of them or created them for the purpose of punishing the Plaintiff." (Def.'s Mot. at 12.) However, the Supreme Court has stressed that a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of a substantial risk of serious harm.*" *Farmer*, 511 U.S. at 842 (emphasis added). Under this standard, Sheriff Sheahan and his co-defendants could be liable.

The issue, therefore, is whether overcrowding constituted a "substantial risk of serious harm." *Id.* We disagree with Defendants' argument that overcrowded conditions "are too remote to satisfy the subjective component" of the *Wilson* inquiry. (Def.'s Mot. at 12.) Plaintiff has alleged that he was injured by other inmates due to violent incidents occurring in an overcrowded cell. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citing *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Moreover, courts have recognized the risk of violence stemming from confining inmates in overcrowded cells. *See*,

11

*e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987) (holding that "institutional order and security [may require correctional officials to reduce] critical overcrowding [in order] to ease tension [between inmates] and drain on the facilities."); *Patrick v. Jasper County*, 901 F.2d 561, 569 (7th Cir. 1990) (noting that "county officials have a duty to maintain their jails to minimize the risks resulting from overcrowding[, including] conflicts among and injury to those individuals incarcerated."). Whether Defendants had the requisite knowledge of a substantial risk from overcrowding is a question of fact. At this point, it is sufficient that Plaintiff has alleged that Defendants had knowledge of the substantial risk and failed to act. We therefore reject Defendants' motion to dismiss for failure to state a constitutional claim.

### C. Claims Against Defendant Sheahan

Defendants argue that Plaintiff's complaint does not allege sufficient facts to support a cause of action against Sheahan in his individual capacity. We agree with Defendants that "Sheriff Sheahan cannot be held personally liable for every tort allegedly committed by an employee of the Cook County Sheriff's Office merely because he is the Sheriff." (Def.'s Mot. at 8-9.) Indeed, "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Galdikas v. Fagan*, 342 F.3d 684, 693 (7th Cir. 2003) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). "[A]n affirmative link [is necessary] between the misconduct complained of and the official sued." *Id.* We find that Plaintiff has stated valid allegations against Sheriff Sheahan in his individual capacity for some claims but not all.

With respect to the excessive force claims, Plaintiff alleges that unknown members of the Sheriff's Special Response Team knocked him on the head without legal cause, used dogs to assault him, and subjected him to unauthorized strip searches. Yet, Plaintiff merely alleges that the unknown officers were subordinates of Sheriff Sheahan. He does not allege that Sheriff Sheahan had any

knowledge about this particular incident or instructed the officers to violate his rights. Consequently, Plaintiff has failed to state these particular claims against Sheriff Sheahan in his individual capacity.

With respect to Plaintiff's conditions of confinement claims, Defendant argues that Plaintiff fails to allege that Sheahan actually knew of the conditions at issue. Without such an allegation of such knowledge, Defendants contend, any individual claim based on conditions of confinement must fail.

We observe that "it is not sufficient for a section 1983 plaintiff to show that a supervisory official was remiss in supervising the implementation of policy in force in an institution." *Rascon v. Hardiman*, 803 F.2d 269, 273-74 (7th Cir. 1986). Instead, to state a claim against Sheahan in his individual capacity, Plaintiff must allege that Sheahan " knowingly, willfully, or at least recklessly caused the alleged deprivation by his action[s] or failure to act." *Id.* Plaintiff has met this burden by alleging that Defendants implemented a "custom, policy, and practice of overcrowding cells." *Id.* ¶ 15. He adds that "Defendants were aware" that the overcrowding of cells led to violence among inmates, which left Plaintiff and other inmates injured. *Id.* ¶ 16. Plaintiff asserts these claims against "Defendants," a denomination that includes Sheriff Sheahan. Hence, we find that Plaintiff has stated these particular claims against Sheriff Sheahan in his individual capacity.

## CONCLUSION

For the foregoing reasons, we grant Defendants' motion to dismiss the excessive force claim against Sheriff Sheahan in his individual capacity. Defendants' motion to dismiss all other claims is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 12/22/04

13